**SOUTHERN ENTERTAINMENT COMPANY OF FLORIDA, INC., etc., et al., Plaintiffs,**

v.

**CITY OF BOYNTON BEACH, etc., Defendant.**

**No. 89–8210–CIV.**

United States District Court, S.D. Florida.

April 6, 1990.

Michael Winer, Fort Lauderdale, Fla., for plaintiffs.

James K. Green, Green, Eisinberg & Cohen, P.A., West Palm Beach, Fla., for defendant.

## MEMORANDUM OPINION

SCOTT, District Judge.

This is an action challenging the constitutionality of a City of Boynton Beach ordinance which regulates the location of adult entertainment establishments. The case was tried before the court without a jury on February 26, 1990. The Court took the matter under advisement and now issues its opinion incorporating its findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

## I. FACTUAL BACKGROUND

Boynton Beach, Florida is a city of 45,000 people with a total area of approximately 15-¾ square miles ("the City"). On July 15, 1980, the City passed Ordinance 80–30. Ordinance 80–30 restricts adult entertainment establishments to areas zoned C–4. Section 1 of Ordinance 80–30 defines an adult entertainment establishment as follows:

> *Adult Entertainment Establishment.* A commercial enterprise which predominately limits admission to "adults only" owing to the sexual nature of its merchandise or entertainment. Such establishments may include but not be limited to adult book stores, adult theatres, adult lounges, adult health studios, adult motels or hotels with nude, bottomless or topless entertainment or employees.[1]

Plaintiff Steven Cooper ("Cooper") controls Southern Entertainment Management Company of Tennessee, a Tennessee company that operates twelve bars in Memphis, Tennessee ("Southern Entertainment Management Company"). Four of the twelve bars operated by Southern Entertainment Management Company in Memphis, Tennessee feature topless entertainment. Plaintiff Ralph Lunati ("Lunati") is a partner of Cooper.

In February 1988, Cooper travelled to the South Florida area for the purpose of purchasing property for use as a nightclub where alcoholic beverages could be served, and topless dancers could be presented as entertainment for the nightclub's patrons. James L. Moore ("Moore"), the general manager of Southern Entertainment Management Company, accompanied Cooper on this business trip. During their trip to South Florida, Cooper and Moore identified a prospective site to purchase located at 3675 South Federal Highway, Boynton Beach, Florida. After speaking with the owner of the property about their interest in purchasing the building for use as a topless bar, Cooper and Moore drove to the Boynton Beach City Hall to check for any zoning restrictions on the property.

When they arrived at City Hall, Cooper stayed in the car while Moore went inside. Inside City Hall, Moore spoke with an unidentified female. Moore asked the woman if the property could be used for a topless nightclub. She informed Moore that there were no restrictions for a topless nightclub on the property. Moore then returned to the car and relayed this information to Cooper.

Three months later, on May 5, 1988, Cooper and Lunati signed a contract to purchase the property for $750,775.38. Prior to signing the contract, Cooper did not review the City's zoning map himself, he did not have an attorney review the City's zoning law, nor did he speak with the director of the City's building and zoning department. Cooper and Lunati merely relied on the information that the unidentified woman at City Hall had provided to Moore. In fact, the property was zoned C–3, and under Ordinance 80–30, topless dancing was not a permitted use of the property.

It was not until some time after Cooper and Lunati had signed the contract that they learned that Ordinance 80–30 prohibited them from operating a topless dancing establishment on the property. Cooper and Lunati then attempted to be released from their contractual obligation to purchase the property, but the seller refused to release them. The closing took place on September 30, 1988.

---

**1.** On May 30, 1990, Boynton Beach City Attorney, Raymond Rea ("Rea"), filed an affidavit with this Court declaring that Ordinance 80–30 was unconstitutional and the City would not be enforcing it. Rea was responsible for evaluating the City's ordinances and instructing the City's employees as to the enforcement of the ordinances.

Subsequently, Plaintiff Southern Entertainment of Florida, Inc. ("Southern Entertainment"), a Florida corporation, obtained the leasehold rights to the property. After spending $100,000 to renovate the property, Southern Entertainment opened an establishment on the property called The Club in December 1989. The Club currently serves alcohol and offers live entertainment in the form of female dancers who wear latex over their breasts. However, Plaintiffs want to operate The Club as a topless bar. On May 16, 1989, the City Commission held a public meeting and passed Ordinance 89–12. Ordinance 89–12 permits adult entertainment establishments in Planned Industrial Development, M–1 Industrial Development, C–3 and C–4 zones subject to the following locational restrictions:

1. No adult entertainment establishment shall be located closer than one thousand feet from any other adult entertainment establishment measured from lot boundary to lot boundary along a straight airline route.

2. No adult entertainment establishment shall be located closer than one thousand feet from any house of worship, residential zoning district, public usage district, recreation district, or school, measured from any lot boundary to lot boundary along a straight airline route.

Section 1.M.

By the following language, Ordinance 89–12 also incorporated the definition of adult entertainment as previously set forth in Ordinance 80–30:

Each and every other provision of Appendix A–Zoning, of the Code of Ordinances of the City of Boynton Beach, Florida, not specifically amended herein shall remain in full force and effect as previously enacted.

Section 6.

The City notified the public of the May 16, 1989 City Commission meeting through an advertisement that was less than one-quarter page. The notice provisions of Florida Statutes Section 166.041 require that these advertisements "be no less than one-quarter page in a standard size or a tabloid size newspaper."[2] Consequently, on June 5, 1989, Boynton Beach's City Attorney, Raymond Rea, presented to the City's Planning & Zoning Board his proposal for Ordinance 89–17, which readopted the provisions of Ordinance 89–12. The Planning and Zoning Board unanimously voted to submit the proposed ordinance to the City Commission for its adoption.

---

**2.** Florida Statutes Section 166.041(3)(c)2 provides in pertinent part:

2. In cases in which the proposed ordinance deals with more than 5 percent of the total land area of the municipality, the governing body shall provide for public notice and hearings as follows:

a. The local governing body shall hold two advertised public hearings on the proposed ordinance. Both hearings shall be held after 5 p.m. on a weekday, and the first shall be held approximately 7 days after the day that the first advertisement is published. The second hearing shall be held approximately 2 weeks after the first hearing and shall be advertised approximately 5 days prior to the public hearing. The day, time, and place at which the second public hearing will be held shall be announced at the first public hearing.

b. The required advertisements shall be no less than one-quarter page in a standard size or a tabloid size newspaper, and the headline in the advertisement shall be in a type no smaller than 18 point. The advertisement shall not be placed in that portion of the newspaper where legal notices and classified advertisements appear. The advertisement shall be published in a newspaper of general paid circulation in the municipality and of general interest and readership in the community, not one of limited subject matter, pursuant to chapter 50. It is the legislative intent that, whenever possible, the advertisement appear in a newspaper that is published at least five days a week unless the only newspaper in the community is published less than 5 days a week. The advertisement shall be in the following form:

NOTICE OF ZONING (PERMITTED USE)
CHANGE

The ...... (name of local governmental unit) ...... proposes to rezone (change the permitted use of) the land within the area shown in the map in this advertisement.

A public hearing on the rezoning will be held on ...... (date and time) ...... at ...... (meeting place) .......

The advertisement shall also contain a geographic location map which clearly indicates the area covered by the proposed ordinance. The map shall include major street names as a means of identification of the area.

....

§ 166.041, Fla.Stat. (1989).

Under proposed ordinance 89–17, six adult entertainment establishments would be permitted in Quantum Park, a Planned Industrial Development. During the June 5, 1989 meeting of the City's Planning and Zoning Board, the Vice President of Sales and Marketing of the owner/developer of Quantum Park, John Halliday ("Halliday"), objected to the location of any adult entertainment establishments in Quantum Park. Halliday told the members of the Planning and Zoning Board that the owner/developer of Quantum Park did not intend to sell any of its property for use as an adult entertainment establishment. Halliday also told the members that although Quantum Park could initially refuse to sell to anyone who intended to use the property as an adult entertainment establishment, it could not prevent the new owner of the property from selling the land to a subsequent purchaser who desired to use the property for that purpose. At that point, City Attorney Rea advised Halliday that Quantum Park could put in any type of deed restrictions they wanted when they conveyed the property.

On June 20, 1989, the City Commission repealed Ordinance 89–12 and enacted Ordinance 89–17. As with Ordinance 89–12, the City enacted Ordinance 89–17 in violation of the notice requirements of Florida Statutes Section 166.041. At the first public hearing on proposed Ordinance 89–17, the City failed to announce the day, time and place at which the second public hearing was to be held.[3] Moreover, on the maps used in the advertisements providing notice of the public hearings on proposed Ordinance 89–17, the City failed to clearly indicate the area covered by the proposed ordinance and failed to include major street names.[4]

At trial, the parties stipulated that under the City's current zoning laws, Ordinances 89–12 and 89–17 permit eleven potential sites, or 3.25% of the City's total land area, for the location of adult entertainment establishments.[5] Six of these eleven sites are located in the Planned Industrial Development known as Quantum Park.

The parties also stipulated that under the City's Comprehensive Plan, Ordinances 89–12 and 89–17 permit three additional potential sites for adult entertainment establishments. However, unless outlying property is annexed by the City, these sites are unavailable. The City never submitted any evidence that this annexation would in fact occur. Therefore, the Court finds that these sites are unavailable.

Similarly, the parties stipulated that if certain land in the City was rezoned or replatted, an additional nineteen potential sites would be available. Again, the rezoning or replatting of the City's land is purely speculative and cannot enlarge the otherwise available sites to be considered by the Court in these proceedings. The City failed to produce any evidence that this land would be rezoned or replatted.

## II. DISCUSSION

### A. *Analytical Framework*

Plaintiffs have brought this action against the City under 42 U.S.C. § 1983. Plaintiffs challenge Ordinance 89–17 on numerous grounds and they seek injunctive and declaratory relief.[6]

As part of their constitutional attack against Ordinance 89–17, Plaintiffs contend

---

3. *See* Florida Statutes Section 166.041, *supra* note 1.

4. *Id.*

5. Two of these eleven sites fall within the existing parking lot of Boynton Beach Mall. Absent any evidence as to the availability of space within the parking lot, and in light of the parties' stipulation, the Court need not address whether the parking lot provides an area in which adult entertainment establishments could actually locate.

6. Plaintiffs' Third Amended Complaint also challenges the constitutionality of Ordinance 89–12 and seeks to permanently enjoin the City from enforcing Ordinance 89–12. However, Ordinance 89–12 was repealed by the City on June 20, 1989. This claim of the Plaintiffs is therefore moot and dismissed with prejudice. *Church of Scientology F.S.O. v. City of Clearwater,* 777 F.2d 598, 605 (11th Cir.1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986).

that the ordinance violates the First Amendment because it unreasonably restricts the number of potential sites available for the location of adult entertainment establishments. The City argues that the Twenty-first Amendment permits it to ban nude dancing entirely when it occurs in connection with the sale of alcohol.

 "Ordinances which restrict nude dancing in establishments as a form of speech, absent any connection with the serving of alcohol, are subject to attack on First Amendment grounds." *International Food & Beverage Systems v. City of Fort Lauderdale*, 664 F.Supp. 482, 485 (S.D.Fla.1987) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)). Conversely, under the Twenty-first Amendment, a municipality empowered by the state to regulate the sale of alcoholic beverages may impose a total ban on nude dancing as an incident to the regulation of alcohol. *Newport v. Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986); *New York State Liquor Auth. v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). It is well-settled that municipalities in Florida "have the authority to exercise the regulatory power of the twenty-first amendment...." *City of Daytona Beach v. Del Percio*, 476 So.2d 197 (Fla.1985); *see also International Food & Beverage Systems v. City of Fort Lauderdale*, 664 F.Supp. 482, 483–84 (S.D.Fla.1987). Therefore, the analytical framework to be applied in this case depends on whether Ordinance 89–17 regulates the sale of alcohol in conjunction with nudity or merely regulates nudity as a form of speech.

Ordinance 89–17 restricts the number and location of "adult entertainment establishments." It defines an "adult entertainment establishment" as a "commercial enterprise which predominately limits admis-

sion to 'adults only' owing to the sexual nature of its merchandise or entertainment." Section 1, Ordinance 80–30. As examples of adult entertainment establishments, the ordinance lists "adult book stores, adult theatres, adult lounges, adult health studios, adult motels or hotels with nude, bottomless or topless entertainment or employees." *Id.*

It is evident from this definition that the regulation of alcohol is not the target of Ordinance 89–17. Instead, the ordinance is aimed at regulating sexually oriented businesses. There is no connection whatsoever between the restrictions imposed by Ordinance 89–17 and the service of alcohol. In fact, the ordinance does not even mention alcohol.

For these reasons, the Court finds that Ordinance 89–17 does not regulate nudity in conjunction with the regulation of alcohol. *See Leverett v. City of Pinellas Park*, 775 F.2d 1536, 1540 n. 2 (11th Cir.1985) (ordinance applying to nude or semi-nude entertainment in any "commercial establishment" did not regulate protected expression as an incident to the regulation of alcohol).[7] Ordinance 89–17 is thus subject to attack under the First Amendment and the Court will proceed to analyze Plaintiffs' claims on that basis.

### B. *First Amendment Claims*

Plaintiffs claim that Ordinance 89–17 is unconstitutional under the First Amendment for two reasons. First, they claim that the City acted with impermissible intent in passing the ordinance. Plaintiffs assert that the true intent of the City was to suppress Plaintiffs' First Amendment rights. It is argued that this impermissible intent is shown by the legislative history of the ordinance. Plaintiffs point to the testimony of Halliday, who told the City's Planning and Zoning Board that the owner/developer of Quantum Park did not intend to sell any of its property to adult entertainment businesses. Plaintiffs also direct the Court's attention to various statements

---

**7.** For an example of an ordinance found to regulate protected expression as an incident to the regulation of alcohol, see *International Food & Beverage Systems v. City of Fort Lauderdale*, 664 F.Supp. 482, 484 (S.D.Fla.1987).

made by City officials, including City Attorney Rea's advice to Halliday concerning the possible use of deed provisions to limit the use of any property sold by Quantum Park.

Second, Plaintiffs claim that the ordinance does not allow ample alternative avenues of communication for protected speech. Plaintiffs argue that six of the eleven potential sites are located in Quantum Park. They maintain that since the City knew that these six sites are presently unavailable for sale by Quantum Park, the six locations should not be considered in determining whether Ordinance 89–17 reasonably permits alternative avenues of communication.

■■■ The Court must address Plaintiffs' allegation of impermissible intent under the principle of constitutional law that courts are not to "strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968). A zoning ordinance will be treated as a legitimate time, place, and manner regulation if it is designed to serve a substantial government interest. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). If a city's purpose is to control the secondary effects of certain businesses, that is a substantial interest. *Young v. American Mini Theatres*, 427 U.S. 50, 71, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976). If the predominate intent of the city is to control the adverse secondary effects, the fact that suppression of speech may be a partial motivating factor is inconsequential. *Renton*, 106 S.Ct. at 929.

As explained by the Fifth Circuit in *SDJ, Inc. v. The City of Houston*, 837 F.2d 1268, 1274 (5th Cir.1988):

> [A] city may establish its "substantial interest" in the regulation by compiling a record with evidence that it may be "reasonably believed to be relevant to the problem that the city addresses." We do not ask whether the regulator subjectively believed or was motivated by other concerns, but rather whether an objective lawmaker could have so concluded, supported by an actual basis for the conclusion. Legitimate purpose may be shown by reasonable inferences from specific testimony of individuals, local studies, or the experiences of other cities. This level of scrutiny best accommodates the need to ensure proper purposes with the limited competence of courts to discern ephemeral legislative motivations.

*SDJ, Inc.*, 837 F.2d at 1274.

In the present case, Ordinance 89–17 states that its purpose is to "diffuse any deleterious effects of the concentration of [adult entertainment] businesses, specifically upon 'crime, retail trade, property values, and the quality of life in neighborhoods, commercial districts and the urban life in general.'" Ordinance 89–17, Preamble. Clearly, the stated purpose of the ordinance is to deal with the secondary effects of the regulated uses.

Additionally, the record reflects that the City Commission considered the relationship between sexually oriented businesses and neighborhood effects. The City Commission heard testimony from an official of the Palm Beach County Sheriff's office, Agent Alberti. Agent Alberti testified regarding a report that he had prepared for Palm Beach County concerning the secondary effects of topless bars. His report incorporates a number of other studies that have been done throughout Florida and other cities in the United States. The findings of the City Commission contained in the language of Ordinance 89–17 are based upon the report prepared by Palm Beach County.

The Court is convinced that there is an adequate factual basis to demonstrate that Ordinance 89–17 was designed to address the secondary effects of sexually oriented businesses. *Renton* has made it clear that a city need not conduct its own independent study or gather its own evidence on the effect of adult uses on surrounding neighborhoods. *Renton*, 106 S.Ct. at 930. A city is entitled to rely on the experience of other municipalities, and in the present case, the City relied on the experience of Palm Beach County and other municipalities throughout the United States. The Court therefore finds that the City has

proved a substantial interest in the regulation of adult entertainment establishments. The Court further finds that the City's predominate concern in enacting Ordinance 89–17 was with the secondary effects caused by sexually oriented businesses.

The Court disagrees with Plaintiffs' claim that the City's impermissible intent is shown by various statements made by certain city officials. The Court finds that the isolated comments of various individuals (no matter how imprudent) do not outweigh the legitimate purposes stated in the ordinance or the underlying evidence of secondary effects. Plaintiffs' impermissible intent argument therefore fails.

■ The Court also disagrees with Plaintiffs' argument that it should disregard the six sites located in Quantum Park when determining whether the ordinance provides ample alternative avenues of communication because those sites are currently unavailable for sale. As the *Renton* Court stated, the appropriate inquiry is whether the ordinance "refrain[s] from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the [C]ity." *Renton*, 106 S.Ct. at 932. This means that alternative sites need not be practically or commercially viable: "That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation." *Id.*

The evidence shows that eleven locations in the City potentially could accommodate Plaintiffs' business. The Court is satisfied and finds that Ordinance 89–17 provides Plaintiffs with a reasonable opportunity to operate their business within the City. *See Function Junction, Inc. v. City of Daytona Beach*, 705 F.Supp. 544 (M.D.Fla.1988) (Daytona Beach ordinance permitting twelve potential sites for nude dancing establishments found to allow sufficient alternative means of expression).

In conclusion, the Court finds that Ordinance 89–17 is a valid governmental response to the adverse secondary effects caused by sexually oriented businesses and that it was not enacted to suppress Plain-

tiffs' protected suppression. The City of Boynton Beach "has sought to make some areas available for [adult entertainment establishments] and their patrons, while at the same time preserving the quality of life in the community at large by preventing those [establishments] from locating in other areas. This, after all, is the essence of zoning." *Id.*

### C. *Vagueness and Overbreadth*

■ Plaintiffs' next attack on Ordinance 89–17 is that it is unconstitutionally vague and overbroad. Plaintiffs claim that the ordinance does not contain a definition of the term "adult entertainment establishment." The City counters this claim by arguing that Ordinance 89–17 incorporates the definition of "adult entertainment establishments" that appeared in Ordinance 80–30. Plaintiffs do not argue that the definition contained in the language of Ordinance 80–30 is flawed. Rather, they claim that the City is barred from arguing that Ordinance 89–17 adopts the definitions contained in Ordinance 80–30 because City Attorney Rea filed an affidavit with this Court declaring that Ordinance 80–30 was unconstitutional and would not be enforced.

The Court is unpersuaded by Plaintiffs' argument and finds that the City is not barred from incorporating Ordinance 80–30's definition of "adult entertainment establishments" into Ordinance 89–17. Plaintiffs' attack on the ordinance based on vagueness and overbreadth, therefore, fails.

### D. *Failure to Comply With State Notice Requirements*

As their final challenge to Ordinance 89–17, Plaintiffs contend that the ordinance is legally defective and void because it was not adopted by the City in accordance with the notice provisions of Florida Statutes Section 166.041(3)(c)2. Plaintiffs claim that at the first public hearing on Ordinance 89–17, the City failed to announce the day, time, and place at which the second public hearing would be held as required by § 166.041(3)(c)2.a. Plaintiffs also claim

that on the maps used in the public hearing advertisements, the City failed to clearly indicate the area covered by the proposed ordinance and failed to include major street names in accordance with § 166.041(3)(c)2.b.

The City concedes that it did not comply with the notice provisions of § 166.041. The City argues, however, that Florida law is unclear as to whether the City was required to comply with these particular provisions under the facts of this case and urges the Court to abstain from deciding these state law issues.

The Court notes that the form of abstention urged by the City is that set forth in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). It is commonly known as *Pullman* abstention and is a narrow exception "to be exercised only in *special* or 'exceptional' circumstances." *Duke v. James*, 713 F.2d 1506, 1610 (11th Cir.1983) (footnote omitted). "*Pullman* abstention is appropriate when there is an unsettled question of state law, the question is 'dispositive of the case and resolution of the question would avoid, or substantially modify the constitutional question.'" *A.B.T. Corporation, Inc. v. City of Fort Lauderdale, Florida,* 664 F.Supp. 488, 493 (S.D.Fla.1987).

■ The City first claims that it is an unsettled question of Florida law as to whether Plaintiffs have standing to challenge the lack of oral notice at the first public hearing because they were not present at the first hearing. The Court rejects this contention.

It is well-settled in Florida that "[a]ny affected resident, citizen or property owner of the governmental unit in question has standing to challenge" a zoning ordinance which is void because not properly enacted, as where required notice was not given. *Renard v. Dade County*, 261 So.2d 832, 838 (Fla.1972). In this case, it is uncontroverted that Plaintiffs are property owners who are affected by Ordinance 89–17. The Court therefore holds that Plaintiffs have standing to challenge the ordinance under Florida law.

The City also claims that where a proposed zoning ordinance affects uses in an entire city, Florida law is unclear as to whether § 166.041 requires the advertisement maps to contain street names. This contention is factually unfounded. Proposed Ordinance 89–17 did not deal with the City's total land area. It only changed the permitted uses in those areas in the City zoned Planned Industrial Development, M–1 Industrial Development, C–3 and C–4. The City's argument on this point must therefore be rejected.

Despite the City's attempts to muddy the waters, the Court determines that Florida law is clear and provides ample guidance for the resolution of the state procedural issues this case raises. The Court therefore refuses to stay its hand and proceeds to address Plaintiffs' state law claims.

■ Plaintiffs' proof establishes, without contradiction from the City, that Ordinance 89–17 was not adopted in accordance with section 166.041(3)(c)2. Under Florida law, strict compliance with the notice requirements of the state statute is a jurisdictional and mandatory prerequisite to the valid enactment of a zoning measure. *Ellison v. City of Fort Lauderdale,* 183 So.2d 193 (Fla.1966); *Daytona Leisure Corp. v. Daytona Beach*, 539 So.2d 597 (Fla. 5th DCA 1989); *Fountain v. City of Jacksonville*, 447 So.2d 353 (Fla. 1st DCA 1984). Failure to follow the state statutory notice requirements render a zoning ordinance void. *Ellison, supra; Daytona Leisure, supra; Fountain, supra.* Florida's statement of the general rule in terms of jurisdiction dictates the conclusion that there are no circumstances under which noncompliance with the statute may be excused so as to result in the passage of a valid zoning ordinance.

Based on the uncontroverted evidence, the Court finds that Ordinance 89–17 was not enacted pursuant to the requirements of Section 166.041. The ordinance is therefore deemed null and void because of the City's failure to comply with the procedural requirements of Section 166.041.

## III. CONCLUSION

Ordinance 89–17 reflects the effort on the City's part toward preserving the quality of its urban life, while making some areas available for adult entertainment establishments and their patrons. These are laudable goals with which the Court has considerable sympathy. Unfortunately, however, the City failed to expend the minimal energy necessary to ensure that the ordinance was legally enacted under the state's notice requirements. In light of the considerable efforts expended by the City to ensure that the ordinance did not suppress protected speech, it is surprising that the City failed to comply with the simple statutory notice requirements on not one, but at least two separate occasions. Be that as it may, under Florida law, the ordinance is of no effect.

Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

1. Plaintiffs' motion for permanent injunction is GRANTED. The City of Boynton Beach is permanently enjoined from enforcing Ordinance 89–17.

2. Final judgment will be entered in favor of Plaintiffs on their claim that Ordinance 89–17 is legally void for statutory noncompliance and in favor of Defendant on the remaining claims asserted by Plaintiffs.

DONE AND ORDERED.