# REDNER v STATE OF FLORIDA
## Case No. 90-9819 (Lower Court Case No. 90-6416)
Thirteenth Judicial Circuit, Hillsborough County

June 4, 1991

### APPEARANCES OF COUNSEL

**Luke C. Lirot, Esquire,** for appellant.

**Jack W. Crooks, Esquire** and **Robert R. Warchola, Esquire,** for appellee.

### OPINION OF THE COURT

RICHARD A. LAZZARA, Circuit Judge.

The Appellant stands convicted of violating the adult use provisions of Hillsborough County Ordinance 88-10. (App 22-28)[1] He challenges

---

[1] The Appendix consists in part of the relevant portions of the record extracted from the State's (Appellee's) Supplement To Record and the Appellant's Supplemental Appendix To Record On Appeal.

the validity of this ordinance alleging that it was invalidly enacted and is constitutionally infirm. This Court agrees that the ordinance was invalidly enacted and reverses the Appellant's conviction. Since the Court decides this case on a procedural ground, no opinion is expressed as to the constitutional issues presented for review. *Linville v Escambia County,* 436 So.2d 293 (Fla. 1st DCA 1983), *pet. for rev. denied,* 444 So.2d 416 (Fla. 1984).

A brief synopsis of Hillsborough County's efforts to regulate adult uses and the events preceding the enactment of Ordinance 88-10 is necessary to put this Court's ruling into proper perspective.

On September 7, 1977 the Hillsborough County Commission enacted Ordinance 77-13. (App 1-5) This ordinance restricted the placement of adult uses within 500 feet of certain defined areas. On April 15, 1986 the commission enacted Ordinance 86-15 (App 6-11) which retained the same adult use locational restriction. On November 6, 1986 the commission enacted Ordinance 86-33. (App 12-18) This ordinance increased the locational restriction between adult uses and certain defined areas from 500 feet to 2000 feet. On August 17, 1987 the author of this opinion who at the time was a Hillsborough County Court Judge entered an order declaring that the 2000 foot locational restriction of Ordinance 86-33 was unconstitutional. (App 29-30)[2]

In response to this order the commission enacted Ordinance 87-22 on September 16, 1987. (App 19-21) This ordinance amended Ordinance 86-33 and decreased the locational restriction between adult uses and certain defined areas to 500 feet. Additionally, the commission directed its zoning staff to undertake a new zoning study to determine whether a re-enactment of the 2000 foot distance restriction would be valid. This study utilized the zoning maps of Hillsborough County. (R 403-407 and 419-420)

Based on this zoning study the commission enacted Ordinance 88-10 on March 1, 1988. The ordinance re-established the 2000 foot locational restriction between adult uses and certain defined areas and made another significant change. That is, the responsibility for certifying and regulating the placement of adult uses was vested in a zoning administrator.

Given this procedural history, the issue for this Court's resolution is

---

[2] At oral argument both parties agreed that the Trial Court had considered this order, that the State of Florida did not appeal this order, and that Hillsborough County utilized the substance of this Order in its subsequent efforts to enact an adult use ordinance.

whether Ordinance 88-10 is a zoning ordinance within the meaning of section 125.66(5)(b), Fla. Stat. (1987)?[3]

This statutory subsection mandates that when an ordinance initiated by a board of county commissioners rezones private real property strict notice and public hearing requirements must be followed. Failure to follow these statutory requirements renders the ordinance null and void and vitiates any conviction obtained under the ordinance. *Ellison v City of Fort Lauderdale*, 183 So.2d 193 (Fla. 1966); *Daytona Leisure Corp. v City of Daytona Beach*, 539 So.2d 597 (Fla. 5th DCA 1989); *David v City of Dunedin*, 473 So.2d 304 (Fla. 2d DCA 1985); and *Fountain v City of Jacksonville*, 447 So.2d 353 (Fla. 1st DCA 1984). Indeed, compliance with such statutory requirements is so fundamental that any deficiency in that regard is a failure of due process and cognizable by an appellate court if apparent in the record even though not presented to the trial court or in the briefs on appeal. *Skaggs v City of Key West*, 312 So.2d 549 (Fla. 3d DCA 1975).

If Ordinance 88-10 is an ordinance within the scope of section 125.066(5)(b), it is apparent in the record that Hillsborough County did not follow the requirements of this statute.[4]

One, the advertised notices published in the newspaper for the first public hearing held on February 16, 1988 did not conform to the form advertisement as required by section 125.66(5)(b)(2) in that (1) they were less than one-quarter page; (2) the headlines in the advertisements were smaller than 18 point type; (3) they did not advertise notice of a zoning change; and (4) they did not contain a geographic location map indicating the area covered by the proposed ordinance and did not include major street names as a means of identification of the area. (App 33-34) *Southern Entertainment Company of Florida, Inc. v City of Boynton Beach*, 736 F.Supp. 1094 (S.D. Fla. 1990) (Newspaper advertisement that was less than one-quarter page, that failed to clearly indicate area covered by proposed ordinance, and that failed to include major street names rendered enactment of adult use ordinance void. Under Florida law "there are *no circumstances* under which *noncompliance with the statute may be excused so as to result in the passage of a valid zoning ordinance." 736 F.Supp. 1102) (emphasis supplied)*

Two, the first public hearing was not held approximately seven days after the first advertised public notice was published as required by

---

[3] As noted, Ordinance 88-10 was adopted on March 1, 1988. Thus this statute is controlling.

[4] The Appellee conceded at oral argument that if the ordinance is a zoning ordinance the statute was not followed.

78

section 125.66(5)(b)(1). The advertisements appeared on January 29, 1988. The first public hearing was held on February 16, 1988 or 18 days later.[5]

Three, the advertised notices published in the newspaper for the second public hearing again did not conform to the form advertisement as required by section 125.66(5)(b)(2) in that they nowhere indicated a notice of a zoning change. (App 35-36)

Of course, the Trial Court determined that Ordinance 88-10 was not a zoning ordinance and thus concluded that it was properly enacted. (R 647-648) This Court respectfully disagrees with the Trial Court's conclusion for the following reasons.

First, the preamble to the ordinance clearly reflects that the Hillsborough County Commission based its regulation of adult uses on the authority granted by *Young v American Mini Theatres, Inc.,* 96 S.Ct. 2440 (1976) and *Renton v Playtime Theatres, Inc.,* 106 S.Ct. 925 (1986). (App 23) In those cases the United States Supreme Court held that a governmental entity could utilize its zoning power to combat the adverse secondary effects associated with adult use establishments.[6] As the Court in *Renton* stated:

> In sum, we find that the Renton ordinance represents a valid governmental response to the "admittedly serious problems" created by adult theaters. (cite omitted) Renton has not used "the power to zone as a pretext for suppression expression," (cite omitted) but rather has sought to make some areas available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by preventing those theaters from locating in other areas. *This, after all, is the essence of zoning.* Here, as in *American Mini Theatres,* the city has enacted a *zoning ordinance* that meets these goals while also satisfying the dictates of the First Amendment. 106 S.Ct. 932-933 (emphasis supplied)[7]

Second, Ordinance 88-10 vests the responsibility for insuring compliance with the locational restrictions of the ordinance in a

---

[5] Although this deficiency was not argued by the Appellant, it is apparent in the record. *Skaggs, supra,* pg. 552.

[6] It is significant that at a public hearing held on November 6, 1986 in connection with the proposed enactment of Ordinance 86-33 the chairman of the commission told the Appellant "the issue today was not censorship but *zoning.*" (App 31) (emphasis supplied)

[7] The locational restrictions of the Renton ordinance are somewhat similar to the locational restrictions of Ordinance 88-10.

zoning administrator. The ordinance establishes a detailed certification process administered by the zoning administrator and before a person can obtain an occupational license for an adult use that person must comply with the process and obtain a certification from the zoning administrator that the proposed location of the adult use conforms to the locational requirements of the ordinance. (App 24-25) Additionally, before the commission may grant a waiver of the locational restrictions, it must obtain the recommendation of the planning and *zoning* department. (App 25-26)

Third, Ordinance 88-10 is similar in nature to the ordinance considered in *David, supra.* In *David* the Court determined that the City of Dunedin's sign code which contained a six year amortization period "which down-zoned the permitted sign code uses in plaintiffs' business zone" was a zoning ordinance which had to be enacted in strict compliance with the notice and public hearing requirements of section 166.041.[8] So, too, in this case, Ordinance 88-10 which has a five year amortization period has the effect of "down-zoning" the ability of a person to be able to continue to maintain an adult use within a zoning district. According to the testimony considered by the Trial Court of the zoning official who prepared the study which the commission used to determine whether or not the distance requirements of the ordinance would be valid, under the terms of the ordinance nine of the existing eleven adult uses would have to relocate. (R 418-419) Therefore, just as in *David,* Ordinance 88-10 is a zoning ordinance which had to be enacted in strict compliance with section 125.66(5)(b).[9] *Daytona Leisure Corp., supra,* pg. 599 (Emergency ordinance which prohibited sale or dispensing of alcoholic beverages within 200 feet of residential areas which previously was permitted was a zoning ordinance and, as such, was improperly enacted where the statutorily required notice and opportunity to be heard was not provided.)

Fourth, as the record reflects, one of the contested issues before the Trial Court was the definition of the term "school" as used in Ordinance 88-10. The Hillsborough County Attorney's Office[10] issued

---

[8] Section 166.041 is the counterpart of section 125.55 that applies to zoning ordinances initiated by a municipality.

[9] At oral argument counsel for the Appellee recognized the binding precedent of *David* as applied to this case, although he acknowledged he was not in agreement with the holding of the case.

[10] Two attorneys from the same office were appointed special assistant state attorneys to prosecute the case on behalf of the State of Florida. (R 352-355)

an opinion to the zoning administrator as to the definition of a school under the ordinance. (State's Exhibit 12 and R 117) Interestingly, since Ordinance 88-10 did not define school, the county attorney's office looked to the Hillsborough County Zoning Code for the definition because both the ordinance and zoning code regulated and restricted the use of land. Based on that fact and the further fact that the ordinance designated the zoning administrator as the entity responsible for reviewing adult use applications, the county attorney concluded "the two ordinances may be deemed *in pari material.*" (Appellant's Initial Brief, pg. 16)[11] Based on this legal opinion, it is incongruous for the Appellee to argue that Ordinance 88-10 was not a zoning ordinance.

Fifth, at the first advertised public hearing held on February 16, 1988 in connection with the proposed adoption of Ordinance 88-10, an Assistant County Attorney "advised that a second public hearing was *required* before the Board could adopt the ordinance." (App 32) (emphasis supplied) In that under section 125.66 the only time two public hearings are mandated before a county commission can enact an ordinance is in connection with an ordinance which rezones 5% or more of the total land area of a county, it is logical to conclude that the commission was put on notice by its own legal advisor that Ordinance 88-10 was a zoning ordinance within the meaning of the statute. Additionally, if the ordinance was not a rezoning ordinance why did Hillsborough County make a belated attempt to comply to some degree with the notice requirements of section 125.66(5)(b)(2)? (App 35-36)

Finally, the Trial Court's conclusion based on the record that Ordinance 88-10 did not rezone any property within Hillsborough County conflicts with *Troup v Bird,* 53 So.2d 717 (Fla. 1951). There the Florida Supreme Court legally defined rezoning as follows:

. . . in a legal sense, rezoning ordinarily contemplates a change in existing zoning rules and regulations within a district, subdivision or other comparatively large area in a given governmental unit, which theretofore has been uniformly zoned in its entirety, . . . 53 So.2d 720.

As is reflected in the record, Ordinance 88-10 clearly contemplated a change in the zoning rules and regulations as they related to the regulation and placement of adult uses in the "governmental unit" of unincorporated Hillsborough County, (App 37) One, Ordinance 88-10

---

[11] At oral argument counsel for Appellee agreed that the Appellant's Initial Brief accurately quoted this memorandum.

re-established the 2000 foot distance restriction between adult uses and certain defined areas (App 24), which had previously been set back to 500 feet by Ordinance 87-22 (App 20) following the County Court order of August 17, 1987 which invalidated the 2000 foot restriction of Ordinance 86-33 by, as noted above, establishing a certification process and vesting responsibility in a zoning administrator to regulate and oversee the placement of adult uses in accordance with the process.

Moreover, this definition of rezoning in *Troup*[12] clearly conflicts with the Appellee's position in its brief and at oral argument (a position accepted by the Trial Court) that rezoning of private real property simply means changing the zoning designation of a piece of property. This Court perceives no difference between, on the one hand, changing the actual zoning classification of a piece of property so as to preclude the establishment of an adult use and, on the other hand, imposing locational "rules and regulations" within a zoning classification that permits an adult use on a piece of property but because of the "rules and regulations" effectively precludes the establishment of an adult use on the property or eliminates an existing adult use on the property.[13] In either situation the effect is tantamount to a rezoning of property. Indeed, this was the clear import of the holding in *David.*

The record is clear: Ordinance 88-10 is a zoning ordinance and prior

---

[12] Since the legislature failed to define the term "rezone" in the statute, this Court may resort to case law for the definition. *State v Hagan,* 387 So.2d 943 (Fla. 1980) and *Bertens v Stewart,* 453 So.2d 92 (Fla. 2d DCA 1984).

[13] In support of its position that there is a distinction between an ordinance which rezones property and an ordinance that affects the use of land (Answer Brief of Appellee, pg. 38), the Appellee points to a recent amendment to section 125.66 which imposes notice and public hearing requirements when a county seeks to adopt an ordinance which does not actually change a zoning designation but does affect the use of land. Section 125.66(6), Fla. Stat. (1990). It is reasonable to conclude that this amendment was made by the legislature "to clarify what was doubtful and to safeguard against misapprehension as to existing law" in the realm of what notice is required when a county enacts an ordinance that has the effect of rezoning property by regulating land use. *Ocala Breeder Sales Co., Inc. v Division of Pari-Mutuel Wagering,* 464 So.2d 1272, 1274 (Fla. 1st DCA 1985).

It is significant that the notice and public hearing requirements of this statutory subsection are exactly the same as the notice and public hearing requirements of section 125.66(5)(b), Fla. Stat. (1987), thus clearly indicating that the legislature recognizes the extreme importance of having the public notified of any proposed land use regulation. By promulgating this amendment to the statute it is reasonable to conclude that the legislature intended to make clear that it has always equated an ordinance which rezones private property with an ordinance that regulates land use and its intent in enacting this amendment was to "clarify" the law in that regard so as to avoid any "misapprehension" about its intent.

to its initiation and adoption the requirements of section 125.66(5)(b) were not followed.[14] Therefore, the failure of Hillsborough County to comply with these statutory requirements renders Ordinance 88-10, the provisions of which the Appellant was convicted of violating, null and void.[15]

As the Florida Supreme Court so concisely stated in *Ellison, supra,* pg. 195:

> The specific grant of zoning power is conditioned by the provision for notice and public hearing. Since the [County] Commission did not comply with the notice and public hearing provision, the ordinance under which the [appellant] was arrested and convicted was invalid.

Therefore, the Appellant's conviction is reversed and the case is remanded to the Trial Court with directions to discharge him.

---

[14] Although the record reflects that the Appellant was present at one of the public hearings held in connection with the proposed adoption of Ordinance 86-33, n. 6, *supra,* the record is also clear that he was not present at the two public hearings held in connection with the proposed adoption of Ordinance 88-10. Thus, *Malley v Clay County Zoning Commission,* 225 So.2d 555 (Fla. 1st DCA 1969) is not implicated.

[15] This Court recognizes Hillsborough County's authority to use its zoning power to regulate adult uses and that this authority "must be accorded high respect". *Young, supra,* pg. 2453. However, this authority must be exercised in accordance with the notice requirements mandated by the legislature. *Ellison, supra.*