Elizabeth J. NEUMONT,
et al., Plaintiffs,

v.

MONROE COUNTY, FLORIDA,
Defendant.

No. 99–10054–CIV–PAINE/VITUNAC.

United States District Court,
S.D. Florida.

May 21, 2003.

Harold E. Wolfe, Jr., Eric M. Grant, LeBoeuf, Lamb, Greene & MacRae, Hartford, CT, William Hoffman Pincus, James Hermann Hicks, Hicks, Brams & Scher, West Palm Beach, FL, for plaintiffs.

Karen Kittian Cabanas, Morgan & Hendrick, Key West, FL, David L. Jordan, Florida Department of Community Affairs, Assistant General Counsel, Tallahassee, FL, for defendant.

### ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ON COUNT X

PAINE, District Judge.

This matter is before the court on the following motions:

1. Defendant Monroe County's Motion for Summary Judgment as to Count X through XIII, filed on March 12, 2003 (D.E.# 322);

2. Plaintiff's Renewed [Cross]-Motion for Partial Summary Judgment as to Count X, filed on March 28, 2003 (D.E.# 343).

### PROCEDURAL HISTORY

This class action case focuses on a Monroe County Ordinance (Ordinance 004–1997). This ordinance, adopted in 1997 and enforced beginning December 15, 1998, places restrictions on certain uses of properties as vacation rentals. Plaintiffs are mostly property owners in Monroe County subject to the Ordinance, and originally brought thirteen claims against defendant Monroe County. Pursuant to this court's November 21, 2002, Order Adopting in Part Report and Recommendation (D.E.# 299), four counts remain:

Count X: Declaratory Judgment as to whether Ordinance is void ab initio because enacted in violation of Florida Statutes § 125.66

Count XI: Compensation for Taking of private property without due process of law

Count XII: Violation of Civil Rights under color of state law as a result of violation (Alleged in Count X)

Count XIII: Other damages resulting from wrongful enactment of Ordinance

While parties have previously moved for summary judgment on Count X, the court initially determined that there were existing issues of material fact regarding, *inter alia,* whether substantial and material changes were made during the enactment process, and, thus, denied summary judgment[1]. Parties now represent that the

---

1. *See* Order Adopting in Part Report and Recommendation (D.E.# 299) at p. 16.

court has all necessary facts for determination of Count X. On Friday, May 2, 2003, the undersigned conducted a hearing on the cross-motions for summary judgment as to Count X. Upon review of the relevant pleadings and oral arguments in light of applicable law, the court finds that Defendant's Motion for Summary Judgment should be granted for the reasons set forth below.

## SUMMARY JUDGMENT STANDARD

The procedure for disposition of a summary judgment motion is well established. According to the Federal Rules of Civil Procedure, summary judgment is authorized only when:

> the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56.

The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the nonmovant. *Id.*

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## UNDISPUTED FACTS[2]

1. Article VIII, Section 1(f & g) of the Constitution of the State of Florida grants both charter and non-charter county governments the power to enact ordinances. Defendant Monroe County is covered by said provision of the Constitution of the State of Florida.

2. Florida Statutes § 125.66 governs the procedures by which a county is empowered to enact ordinances. Section

---

**2.** The court has previously determined a number of undisputed facts relevant to Count X in its November 21, 2002, Order Adopting in Part Report and Recommendation (D.E.# 299). Each of the previously-determined undisputed facts as to Count X is reflected here, along with additional facts gleaned by parties' renewed motions and oral argument held on May 2, 2003.

125.66, *Fla. Stat.*, provides, in pertinent part,

In cases in which the proposed ordinance or resolution changes the actual list of permitted, conditional, or prohibited uses within a zoning category, or changes the actual zoning map designation of a parcel or parcels of land involving 10 contiguous acres or more, the *board of county commissioners shall provide for public notice and hearings as follows:*

1. The board of county commissioners *shall hold two advertised public hearings* on the proposed ordinance or resolution. At least one hearing shall be held after 5 p.m. on a weekday, unless the board of county commissioners, by a majority plus one vote, elects to conduct that hearing at another time of day. The first public hearing shall be held at least 7 days after the day that the first advertisement is published. The second hearing shall be held at least 10 days after the first hearing and shall be advertised at least 5 days prior to the public hearing.

2. The required advertisements shall be no less than 2 columns wide by 10 inches long in a standard size or a tabloid size newspaper, and the headline in the advertisement shall be in a type no smaller than 18 point. The advertisement shall not be placed in that portion of the newspaper where legal notices and classified advertisements appear. The advertisement shall be placed in a newspaper of general paid circulation in the county and of general interest and readership in the community pursuant to chapter 50, not one of limited subject matter. It is the legislative intent that, whenever possible, the advertisement shall appear in a newspaper that is published at least 5 days a week unless the

only newspaper in the community is published less than 5 days a week. *The advertisement shall be in substantially the following form:*

NOTICE OF (TYPE OF) CHANGE

The (name of local governmental unit) proposes to adopt the following by ordinance or resolution: *(title of ordinance or resolution).*

A public hearing on the ordinance or resolution will be held on (date and time) at (meeting place).

§ 125.66(4)(b), *Fla. Stat.* (2001) (emphasis added).

3. Each Monroe County Land Use District is a "zoning category" within the meaning of § 125.66(4) *Fla. Stat. See* Plaintiffs' Seventh Request for Admissions ¶ 1 and Defendant's Response to Request for Admissions ¶ 1.

4. Prior to enacting the Ordinance, and pursuant to the requirements of § 125.66, Defendant advertised and held two required public hearings on the proposed ordinance. These hearings were held during meetings of the BOCC on December 10, 1996 (the "First Hearing") and February 3, 1997 (the "Second Hearing")[3].

5. On or about November 7, 8, & 9, 1996, and January 11, 12, & 16, 1996, Defendant published notice that the subject Ordinance would be considered at public hearings[4].

6. On or about November 7, 8, & 9, 1996, Defendant published its Notice of the First Hearing on the proposed ordinance.

7. The Notice of First Hearing published in November 1996 stated that "[c]opies of the proposed changes are available

---

**3.** Transcripts of said hearings have been judicially noticed by this Court.

**4.** Both notices have been judicially noticed by this Court.

at the Planning Department offices in the Upper and Middle Keys during normal business hours." *See* Order Adopting in Part Report and Recommendation ("Order") at p. 7, ¶ 23.

8. At the time the Notice of First Hearing was published, the only available draft of the proposed ordinance was the September 17, 1996 draft (the "September 17th draft") [5]. *See* Order at pp. 7–8, ¶ 24.

9. At the First Hearing, the BOCC considered and discussed a draft ordinance dated December 10, 1996 (the "Dec. 10th draft") rather than the September 17th draft [6]. *See* Order at p. 8, ¶ 25.

10. The December 10th draft was not completed until December 10, 1996, and was not distributed to the BOCC until after the start of the First Hearing. *See* Order at p. 8, ¶ 26.

11. The December 10th draft was different than the September 17th draft in the following respects:

(a) The September 17th draft proposed a ban on vacation rentals throughout Monroe County, while the December 10th draft took a district-by-district approach to the ban;

(b) The September 17th draft prohibited vacation rentals in some select districts and allowed an option to created a sub-district where vacation rentals would be permitted, while the December 10th draft eliminated the sub-district option for these select districts;

(c) The September 17th draft proposed to create regulations of vacation rentals where allowed, while the December 10th draft substantially added to the quantity of regulations and the difficulty of meeting the regulatory burdens. *See* Order at pp. 8–9, ¶ 27.

12. On or about January 11, 12 & 16, 1997, Defendant published Notice of the Second Hearing on the proposed ordinance.

13. The Notice of Second Hearing published in January 1997 stated that "[c]opies of the proposed changed are available at the Planning Department offices in the Upper and Middle Keys during normal business hours." *See* Order at p. 9, ¶ 29.

14. At the Second Hearing, the BOCC considered and discussed a draft ordinance dated January 29, 1997 (the "January 29th draft") [7]. *See* Order at p. 9, ¶ 30.

15. The January 29th draft was not distributed to the press and public until Friday, January 31, 1997. *See* Order at p. 9, ¶ 31.

16. At the Second Hearing the BOCC also considered and discussed certain changes to the January 29th draft contained in a document entitled an "Errata Sheet." *See* Order at p. 9, ¶ 32.

17. The Ordinance was officially enacted by Defendant at the Second Hearing. *See* Order at p. 10, ¶ 33.

---

5. The September 17th draft has been judicially noticed by this Court.

6. The December 10th draft has been judicially noticed by this Court.

7. The January 29th draft has been judicially noticed by this Court. The court recognizes that there are multiple versions of this draft in the record. However, at the November 12, 2002, hearing held on this matter, parties stipulated that the operative version for the purposes of resolution of pending summary judgment motions is that supplied by Defendant pursuant to its Corrected Motion for Judicial Notice (D.E.# 239).

18. The Ordinance passed by a vote of three to two. *See* Order at p. 10, ¶ 34.

19. Commissioners Freeman and London voted with the three person majority to pass the Ordinance but, prior to the vote, expressed reservations about how the Ordinance would affect the various fishing districts; and both indicated that they did not want to vote on the Ordinance until further study of the issue. *See* Order at p. 10, ¶ 35.

20. At the Second Hearing, the BOCC voted to change the status of vacation rentals in Sparsely Settled Residential Districts from permissive to prohibited. *See* Order at p. 10, ¶ 36.

21. Both the December 10th draft, considered at the First Hearing, and the January 29th draft, considered at the Second Hearing, permitted vacation rentals in Sparsely Settled Residential Districts. The Ordinance as enacted prohibits vacation rentals in Sparsely Settled Residential Districts. *See* Order at p. 10, ¶ 37.

22. At the Second Hearing, the BOCC voted to eliminate any reference whatsoever to twenty-two (out of twenty-three total) Commercial Fishing Districts in Monroe County. *See* Order at p. 10, ¶ 39.

23. The December 10th draft, considered at the First Hearing, and the January 29th draft, considered at the Second Hearing, each addressed vacation rentals in most of the twenty-two fishing districts that the BOCC voted to eliminate from the Ordinance at the Second Hearing. *See* Order at pp. 10–11, ¶ 40.

24. The Ordinance as enacted makes no reference to the Commercial Fishing Area District, Commercial Fishing Village District, or any of the twenty Commercial Fishing Special Districts. *See* Order at p. 11, ¶ 41.

25. No reference was made to the Commercial Fishing Residential District in the September 17th draft, the December 10th draft, or the January 29th draft. The first and only mention of the Commercial Fishing Residential District was in the Errata Sheet introduced at the Second Hearing. *See* Order at p. 11, ¶ 42.

26. The BOCC voted to approve the changes to the proposed ordinance contained in the Errata Sheet, including the prohibition against vacation rentals in Commercial Fishing Residential District. *See* Order at p. 11, ¶ 43.

27. The Ordinance as enacted prohibits vacation rentals in Commercial Fishing Residential District. *See* Order at p. 11, ¶ 44.

### ANALYSIS

Count X is a claim for Declaratory Judgment as to whether the Ordinance is *void ab initio* because enacted in violation of Florida Statutes § 125.66. Embodied in Section 125.66 are notice requirements for proposed ordinances that change the actual list of permitted, conditional, or prohibited uses within a zoning category. *See Fla. Stat.* § 125.66(4)(b). The court recognizes that under Florida law, strict compliance with the notice requirements of the state statute is a jurisdictional and mandatory prerequisite to the valid enactment of a zoning measure. *See Southern Entertainment Co. of Florida, Inc. v. City of Boynton Beach,* 736 F.Supp. 1094, 1102 (S.D.Fla.1990); *see also Lady J. Lingerie, Inc. v. City of Jacksonville,* 973 F.Supp. 1428, 1434 (M.D.Fla.1997), *aff'd in part, quashed in part on other grounds,* 176 F.3d 1358 (11th Cir.1999), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000). "Failure to follow the state statu-

tory notice requirements render[s] a zoning ordinance void." *Southern Entertainment,* 736 F.Supp. at 1102.

Defendant contends that it complied with Section 125.66 in enacting the Ordinance; Plaintiffs contend that defendant did not comply with Section 125.66. At the hearing, plaintiffs categorized their arguments as "Technical Requirements of 125.66 Regarding Advertised Notice" and "Notice and Hearing Violations." The court will address its analysis in such terminology, turning first to plaintiffs' contention that defendant violated the notice and hearing provisions of Section 125.66.

### Notice and Hearing Violations

Parties agree that, pursuant to Florida law, if substantial or material changes were made to the proposed ordinance during the enactment process, defendant would be required to renew the enactment process. Parties disagree, however, on the definition of substantial or material change. Plaintiffs suggest that a substantial or material change is either (1) any change to a proposed ordinance that would change the actual list of permitted/prohibited uses or (2) any amendment to the ordinance during the enactment process, even if not a change to the actual list of permitted prohibited uses. Defendant suggests that a substantial or material change is a change to the original purpose of the proposed ordinance.

At the outset, the court disagrees with plaintiffs suggestion that a substantial or material change is any change to a proposed ordinance that would change the actual list of permitted/prohibited uses. Plaintiffs contend that this view can be derived from the plain language of Section 125.66 itself in that heightened notice is required for "any change to the actual list of permitted, conditional, or prohibited uses within a zoning category." The court rejects this contention, noting that there is a separate standard for determining whether substantial or material changes were made during the ordinance enactment process.

That standard is partially evidenced by Florida Attorney General Opinion 082–93, which establishes the doctrine that a "substantial and material change" made to an ordinance during the enactment process requires that process to begin anew. This Florida AGO opinion specifically addresses the issue of when ordinance adoption notice procedures must begin anew based on amendments made during the enactment process and holds as follows:

> 5 McQuillin, *Municipal Corporations,* § 16.87, states that while there may be a change in details through which the purpose of an ordinance is manifested, the original general purpose of a measure cannot be changed by amendment on passage. Thus, *amendments can be made during passage of an ordinance when the amendment is not one changing the original purpose,* but a material amendment, one going to the substance of the ordinance, cannot be made during the very meeting at which the ordinance is passed. *See, B & B Vending Co. v. City of El Paso,* 408 S.W.2d 545 (Tex. Civ.App.1966) (holding that amendments to a city ordinance between first and second readings were not so substantial to make the final draft a "new" ordinance); *Jefferson v. City of Anchorage,* 513 P.2d 1099 (Alaska 1973)(holding that since amendment of a proposed ordinance did not change its basic character, and since there was no material change in the subject treated, it was not necessary to proceed as though it were a new ordinance, repeating required procedural steps).... *Accord, Farnsley v. Henderson,* 240 S.W.2d 82 (Kentucky App.1951).

*Fla. Atty. Gen. Op.* 82–93 (1982).

This Florida AGO supported the reasoning of the court in *Lamar Advertising of*

*Mobile, Inc. v. City of Lakeland,* a case relied upon by both plaintiff and defendant in the instant matter. *Lamar* dealt with an ordinance regarding comprehensive sign regulations, which was ultimately split into two ordinances. *Lamar Advertising v. City of Lakeland,* 1999 WL 33590589 at *1 (April 15, 1999). The court found the division of the proposed ordinance into two separate ordinances to be a "substantial" change to the original proposed ordinance, meriting a renewal of the enactment procedure. *Id.* at *3. Thus, each ordinance required its own individual notice procedure. *Id.* In reaching its decision, the court noted that the statute:

> repeatedly refers to the notice requirements for "the proposed ordinance" not the proposed **ordinances.** On the morning of March 19, 1990, Defendant amended "the proposed ordinance" and due to **this** amendment, Defendant was required to "begin anew" and satisfy [the statutory notice and hearing requirements](emphasis supplied).

*Id.* at *8.

The decision of whether a substantial or material change was made to the Ordinance in the instant case turns on the court's interpretation of *Lamar.* Indeed, plaintiffs, in their renewed motion, pose the question this way: "do between-draft changes to the 'actual list' require the enactment process to begin anew?" *See* Plaintiffs' Renewed [Cross] Motion for Partial Summary Judgment as to Count X at p. 14. While there is no direct authority on point, the court finds *Lamar* instructive. Indeed, the holding in *Lamar* suggests that the splitting of a proposed ordinance into two distinct ordinances is a between-draft change that merits the en-

actment process to begin anew. This court, however, is disinclined to broaden this proposition to suggest that *every* between-draft change must merit the renewal of the enactment procedure. Rather, this court finds guidance in the underlying Florida AGO, which indicates that a substantial or material change is one which alters "the original general purpose of a measure".

■■■ In the instant case, there is only one proposed Ordinance, and one enacted Ordinance. Plaintiffs have cited numerous examples of changes made to the proposed ordinance during the enactment procedure. *See* Plaintiffs' Renewed Motion at pp. 16–17. Plaintiffs suggest that any one of these changes by itself, or viewed in aggregate, constitute substantial or material changes. The court has reviewed plaintiffs' list of changes, and finds none of them—individually or collectively—to be substantial or material in that the original purpose of the Ordinance remained the same throughout the enactment procedure: the regulation of vacation use. While the ultimate form of regulation evolved throughout the enactment process[8], the basic character of the Ordinance did not. Accordingly, the court finds that there were no substantial or material changes made to the Ordinance.

### Technical Requirements of 125.66 Regarding Advertised Notice

Plaintiffs contend that defendant violated the notice requirement regarding the publishing of the title of the ordinance by (1) failing to publish the complete title of the Ordinance, (2) changing its published title from the first notice to the second

---

8. The court notes that while specific details of the proposed ordinance changed between drafts, the original purpose of the ordinance did not. The court does not find merit in plaintiffs' argument that defendant violated Florida law by changing portions of the proposed ordinance during the enactment process through different drafts. Rather, defendant complied with all notice and hearing requirements of § 125.66.

notice, and (3) failing to reflect the actual title of the proposed ordinance or any draft of same. Defendant claims that both notices were "substantially" in the form required by Section 125.66, and, thus in accordance with Florida law. Defendant also claims that the titles as published provided adequate notice of the Ordinance under consideration.

As this court has recognized in Undisputed Fact # 2, Florida law provides the following requirements regarding the advertised notice for hearings:

> The required advertisements shall be no less than 2 columns wide by 10 inches long in a standard size or a tabloid size newspaper, and the headline in the advertisement shall be in a type no smaller than 18 point. The advertisement shall not be placed in that portion of the newspaper where legal notices and classified advertisements appear. The advertisement shall be placed in a newspaper of general paid circulation in the county and of general interest and readership in the community pursuant to chapter 50, not one of limited subject matter. It is the legislative intent that, whenever possible, the advertisement shall appear in a newspaper that is published at least 5 days a week unless the only newspaper in the community is published less than 5 days a week. *The advertisement shall be in substantially the following form:*

### NOTICE OF (TYPE OF) CHANGE

> The (name of local governmental unit) proposes to adopt the following by ordinance or resolution: *(title of ordinance* or resolution).

> A public hearing on the ordinance or resolution will be held on (date and time) at (meeting place).
> *Fla Stat.* § 125.66(4)(b)(2).

Upon inspection, the court finds that both of the notices provided by defendant were in substantially the form set forth by Section 125.66(4)(b)(2). Having determined that defendant's advertised notices were substantially in the form set forth by Section 125.66(4)(b)(2), the court finds the appropriate standard of review for the sufficiency of the titles of said notices to be contained in *City of Hallandale v. State,* 371 So.2d 186 (Fla. 4th DCA 1979)[9]. In *Hallandale,* the appellees contended (1) that the published titles of the ordinances in question were defective because they did not contain the subject matter of the ordinances and (2) that the amendatory ordinances were deficient because they did not republish at length the section or subsection of the ordinance being amended. *Id.* at 188. Interpreting the relevant portions of the Florida Statutes in conjunction with Article III, § 16 of the Florida Constitution, the *Hallandale* court found that the title of an act provides adequate notice "if it fairly gives such notice as will reasonably lead to inquiry into the body thereof." *Id.* at 188.

This notion was reiterated by this District in *A.B.T. Corp., Inc. v. City of Fort Lauderdale,* 664 F.Supp. 488 (S.D.Fla. 1987). In *A.B.T.,* the plaintiff challenged the validity of a city ordinance on the ground that the published title was insufficient to provide adequate notice under the requirements of § 166.041, *Fla. Stat. A.B.T.,* 664 F.Supp. at 489. Though the Court ultimately dismissed the claims un-

---

9. The court notes that the while *Hallandale* court dealt with Florida Statutes § 166.041, there is an exact correlation to the language of § 125.67, which prohibits "an ordinance from being enacted by reference to its title only." Plaintiffs have relied upon this language in their Renewed Motion for Summary Judgment at p. 6. Thus, the court finds the *Hallandale* decision wholly applicable here.

der the abstention doctrine, it held as follows:

> The plaintiff is correct in noting that the title of [the Ordinance] lacks any reference to nude dancing. The court, however, must uphold the statute against a challenge as to "title defects" unless there are plain and substantial violations of organic constitutional requirements.
>
> Moreover, under Florida law, *the court must reject a challenge to the sufficiency of an ordinance if the title "fairly gives such notice as will reasonably lead to inquiry into the body* [of the ordinance]".

*Id.* at 490 (emphasis supplied).

In this instance, the two notices have been judicially noticed by this court. The title [10] of the first notice appears to read as follows:

> modifying the existing prohibition on tourist housing use including vacation rentals in *residential districts.* (Emphasis supplied).

The title of the second notices appears to read as follows:

> modifying the existing prohibition on tourist housing use including vacation rentals in *all land use districts.* (Emphasis supplied).

### Failure to Publish the Complete Title of the Ordinance

■ Plaintiffs first suggest that because the full title of the ordinance was not published, the Ordinance must fail. The court disagrees with this proposition, noting that the title(s) as published gave such notice as will reasonably lead to inquiry into the body thereof. As defendant argued during the hearing, full titles of proposed ordinances may be voluminous. Publishing a full title may, in the end, confuse the clear purpose of the ordinance and, in so doing, interfere with effective notice. Per *Hallandale,* the title is sufficient to give notice if interested persons will be reasonably led to inquire further. That is exactly the situation here: residents and property owners were given notice that an ordinance was to be considered regarding the existing prohibition on tourist housing.

### Change of Published Title from the First Notice to the Second Notice

■ Plaintiffs next suggest that because defendant changed its published title from the first notice to the second notice, the Ordinance must fail. Plaintiffs argument here seems to center on the notion of a substantial or material change, as previously addressed by this court. The court reiterates its conclusion that any amendments to the proposed ordinance were not substantial or material, including the minor amendment in published title [11].

### Failure to Reflect the Actual Title of the Proposed Ordinance or Any Draft of Same

Lastly, plaintiffs contend that the published titles of the proposed ordinance did not reflect the actual title of the proposal, or any of its drafts, and, thus, the Ordinance must fail. Specifically, plaintiffs suggest that changing the title from "resi-

---

**10.** The court finds this to be the title as proposed under the format required by § 125.66(4)(b)(2), which requires: the (name of local governmental unit) proposes to adopt the following by ordinance or resolution: *(title of ordinance* or resolution).

**11.** As defendant noted at the hearing, plaintiffs argument on this point might have merit if the Ordinance as enacted prohibited tourist housing including vacation rentals in purely commercial districts. However, that is not the case here and all residential districts were properly on notice through both published advertisements.

dential districts" to "all land use districts" was misleading [12].

Plaintiffs attempt to use *First Assembly of God of Naples v. Collier County,* 20 F.3d 419 (11th Cir.1994) to illustrate that even a minor deviation from the strict mandatory jurisdictional requirements of Section 125.66 requires this court to find the Ordinance *void ab initio.* In *First Assembly,* the plaintiffs challenged whether the county's adoption of certain ordinances violated federal due process requirements. *First Assembly,* 20 F.3d at 420. The Court specifically noted that plaintiffs challenged only the federal constitutionality of the ordinances and had not challenged whether the strict notice procedures of Section 125.66 has been followed. *Id.* at 421, n. 1. Thus, the court never interpreted the provisions of Section 125.66 in *First Assembly* [13].

The court finds the appropriate standard of review, once again, to be that enunciated in *Hallandale:* whether the published title fairly gives such notice as will reasonably lead to inquiry into the body? Both the First and Second Notices gave express notice that the proposed ordinance was being considered for the purpose of "regulat[ing] the use of land within [the entire geographic boundaries of Monroe County]," "modifying the existing prohibition on tourist housing use," and "expressly prohibiting all tourist housing uses in certain land use districts." Therefore, both notices gave sufficient notice as to the intent to regulate vacation rental ("tourist housing") use in any and all land use districts and were sufficient to "prompt further inquiry" by interested persons such as plaintiffs.

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant Monroe County's Motion for Summary Judgment as to Count X through XIII (D.E.# 322) is GRANTED IN PART. Summary judgment is GRANTED in favor of Defendant, Monroe County, on Count X. The court reserves ruling on Defendant's Motion for Summary Judgment as to Counts XI through XIII. It is further

ORDERED AND ADJUDGED that Plaintiff's Renewed [Cross]-Motion for Partial Summary Judgment as to Count X (D.E.# 343) is DENIED. It is further

ORDERED AND ADJUDGED that parties shall brief this court within three (3) days of the date of this order to inform the court how the instant ruling will impact remaining Counts XI, XII, and XIII.

---

12. The court notes that the second published advertisement was actually broader than the first, in that it put property owners in all land use districts on notice that their rights might be affected. While the ordinance did not effect the rights of all districts, no one was left out of the notice.

13. The Court upheld the validity of the ordinances as follows: "[g]iven that First Assembly was provided notice and opportunity to be heard, we hold that the deficiencies in notices alleged in this case do not rise to the level of a federal constitutional violation. Therefore, because First Assembly cannot show a violation of due process, the district court was correct in entering summary judgment for the County on this issue." *First Assembly,* 20 F.3d at 422.