967 So.2d 822 (2007)
Elizabeth J. NEUMONT, et al., Appellants,
v.
STATE of Florida, Monroe County, Florida, Appellee.
No. SC06-1204.
Supreme Court of Florida.
September 27, 2007.
*823 Eric Grant, Sacramento, CA, Harold E. Wolfe, Jr., and William H. Pincus, West Palm Beach, FL, and James H. Hicks of Hicks, Brams and Motto, West Palm Beach, FL, for Appellants.
Edwin A. Scales, III of GrayRobinson, P.A., Key West, FL, Monterey Campbell, III of GrayRobinson, P.A., Lakeland, FL, and Robert B. Shillinger, Jr., Chief Assistant County Attorney, Office of County Attorney Monroe County, Florida, Key West, FL, for Appellee.
Harry Morrison, Jr., General Counsel and Rebecca A. O'Hara, Deputy General Counsel, Florida League of Cities, Inc., Tallahassee, FL, and Virginia Saunders Delegal, General Counsel, Florida Association of Counties, Inc., Tallahassee, FL, as Amicus Curiae.
CANTERO, J.
The appellants seek to invalidate a Monroe County ordinance limiting the use of homes as vacation rentals. We must decide what kind of changes to a proposed ordinance during the enactment process are "substantial or material" so that the process must start from scratch. Reviewing the case on appeal from a summary judgment, the United States Court of Appeals for the Eleventh Circuit certified a question to us. We have exercised our discretionary jurisdiction to answer it. See art. V, § 3(b)(6), Fla. Const. For the reasons discussed below, we hold that the changes to an ordinance during the enactment process are only "substantial or material" if they change the ordinance's general purpose.

I. FACTUAL AND PROCEDURAL HISTORY
The Board of County Commissioners of Monroe County enacted Ordinance No. 004-1997 on February 3, 1997. The ordinance restricts the use of residential properties throughout Monroe County as vacation rentals, defined as rentals of fewer than twenty-nine days. The ordinance's purpose is to prevent the diversion of scarce residential housing to vacation rental use. Violations result in criminal penalties.
The County first advertised the ordinance on November 7-9, 1996. The advertisement included the ordinance's title: "Modifying the existing prohibition on tourist housing including vacation rentals in all land use districts." The advertisement stated that a first public hearing was scheduled for December 10. At the time, a draft of the ordinance, dated September 17, 1996, was available to the public.
At the December 10 hearing, the board of county commissioners considered a new draft dated that same day that was distributed to the board during the hearing. It differed from the advertised draft in several respects:
(a) the original draft proposed a ban on vacation rentals throughout the County, while the new draft took a district-by-district approach;
(b) the original draft allowed an option to create sub-districts where vacation rentals would be permitted, while the new draft eliminated that option; and
(c) the new draft included a more-complex licensing system for vacation rentals than did the original draft.
*824 Based on the input received at the hearing, the board ordered additional changes.
On January 11, 12, and 16, 1997, the County advertised a notice of a second public hearing. This advertisement again stated the title of the ordinance, which was the same as the original title except in one respect. It stated, "Modifying the existing prohibition on tourist housing including vacation rentals in all residential districts" (instead of "land use districts").
The second hearing was held on February 3. At that hearing, the board considered a new draft of the ordinance dated January 29, which had been distributed to the public on January 31. At the second hearing, the board also considered an "Errata Sheet," which included additional changes to the proposed ordinance.
After four and half hours of public debate, the board approved the January 29 draft with the proposed changes in the errata sheet. There were three main differences between the December 10 draft and the final version:
(a) The December 10 draft permitted vacation rentals in sparsely settled residential districts while the final ordinance prohibited them;
(b) The December 10 draft addressed vacation rentals in commercial fishing districts, while the final ordinance did not; and
(c) The December 10 draft did not refer to the Commercial Fishing Residential District, while the final ordinance prohibited vacation rentals in that district.
The Plaintiffs, Elizabeth Neumont, et al., own property in Monroe County, which they used for short-term vacation rentals. They sued Monroe County in the United States District Court for the Southern District of Florida, challenging the ordinance based on state and federal law. The various claims sought declaratory relief as to the ordinance's validity, injunctive relief to halt its effect, and compensation for damages resulting from its enforcement. Count X asserted that the ordinance was void because the changes made during the enactment process were "substantial or material," thereby requiring the process to begin anew.
The district court certified a class of plaintiffs, see Neumont v. Monroe County, Fla., 198 F.R.D. 554 (S.D.Fla.2000); and later dismissed several counts. See Neumont v. Monroe County, Fla., 242 F.Supp.2d 1265 (S.D.Fla.2002). After discovery and several rounds of summary judgment motions, the court upheld the ordinance, granted summary judgment for Monroe County on Count X, and dismissed the remaining claims. Neumont v. Monroe County, Fla., 280 F.Supp.2d 1367 (S.D.Fla.2003). Plaintiffs appealed.
The Eleventh Circuit noted that federal courts "address questions of federal constitutional law only as a last resort." Neumont v. Florida, 451 F.3d 1284, 1285 (11th Cir.2006) (quoting Save Our Dunes v. Ala. Dep't. of Envtl. Mgmt., 834 F.2d 984, 989 (11th Cir.1987)). The court further noted that a state law determination on Count X "may remove the need to decide certain questions of federal constitutional law." Id. Therefore, the circuit court certified to us the following question:
Whether, for purposes of Florida Statutes section 125.66(4)(b), a "substantial or material change" in a proposed ordinance during the enactment process (that is, the kind of change that would require a county to start the process over) is confined to a change in the "original general purpose" of the proposed ordinance, or whether a substantial or material change includes (1) a change to the "actual list of permitted, conditional, or prohibited uses within a zoning category," or (2) a change necessary *825 to secure legislative passage of the ordinance?
Id. at 1287. The question is one of first impression in Florida.

II. ANALYSIS
The Plaintiffs argue that Monroe County modified the proposed ordinance several times during the process, and that because the changes were "substantial or material," the enactment process should have been restarted. They argue that after every change to the ordinance, the proposal should have been readvertised and new public hearings held. Monroe County concedes that a substantial or material change to a proposed ordinance would require such action. That requirement derives from a 1982 Florida Attorney General opinion concluding that "if any substantial or material changes or amendments are made during the adoption process, the enactment process . . . must start anew, with full compliance with the reading and notice requirements contained [in the statute]." See Op. Att'y. Gen. Fla. 82-93 (1982). This conclusion is consistent with that of other authorities. See 5 Eugene McQuillin, The Law of Municipal Corporations, § 16.88 (3d ed. 1996) ("An ordinance amended after its publication is not rendered void if the ordinance as amended does not vary from the substance of the original ordinance."). The County argues, however, that the changes to this ordinance were not substantial or material because they did not alter the ordinance's general purpose. Therefore, the only issue we must consider is what kind of changes to a proposed ordinance are "substantial and material" so as to require the process to be restarted.
The parties propose three possible definitions of "substantial or material change." These are: a change to the actual list of permitted, conditional, or prohibited uses within a zoning category; a change necessary to secure legislative passage; and a change in the original purpose of the ordinance. For the reasons explained below, we hold that the last definition  a change in the ordinance's original purpose  is most consistent with the statutory requirements for enacting an ordinance and best furthers the public's interest in efficient and responsive local government.
In the following sections we (A) review the Monroe County zoning system in general and Ordinance No. 004-1997 in particular; (B) analyze the requirements for enacting ordinances listed in section 125.66, Florida Statutes (1995); (C) adopt a definition of "substantial or material change"; and finally (D) apply that definition to this case. We conclude that the general purpose approach is the proper standard.

A. The Monroe County Zoning System and Ordinance No. 004-1997
We first review the Monroe County zoning system. The Monroe County Code (MCC) defines twenty-three categories of land use districts.[1] Each category serves a different purpose. For example, an Urban Commercial District is "intended to serve retail sales and service, professional services and resort activities." Monroe County, Fla., Code § 9.5-203 (2007). An Urban Residential District is intended "to *826 provide areas for high-density residential uses." Id. § 9.5-204. Each district also has permitted, conditional, and prohibited uses. For example, in the Urban Commercial District, "recreational uses [are] limited to: bowling alleys, tennis . . . courts . . . [and] swimming pools." Id. § 9.5-232(a). In the Commercial Fishing Village Districts, commercial fishing is a permitted use, but wireless communications facilities are a conditional use, subject to certain conditions.
The use at issue here was vacation rentals. The ordinance defined vacation rentals as short-term leases of fewer than twenty-nine days. The ordinance permits vacation rentals in certain districts.
As noted above, during the enactment process, the County considered several versions of the ordinance. Between the first published notice in November 1996 and the final public hearing in February 1997 the County altered the list of land use districts where vacation rentals were permitted. For example, the original version permitted them in the Sparsely Settled Residential Districts, while the final version did not. The original version did not mention the Commercial Fishing Residential District, while the final version prohibited vacation rentals there. Finally, the original version addressed vacation rentals in 22 of the 23 Commercial Fishing Districts, but the final version did not refer to them.

B. Section 125.66, Florida Statutes
Article VIII, section 1 of the Florida Constitution authorizes counties to enact local ordinances: "The board of county commissioners of a county . . . may enact, in a manner prescribed by general law, county ordinances." Section 125.66, Florida Statutes (1995), establishes the procedures by which ordinances may be enacted: "In exercising the ordinance-making powers conferred by s.1, Art. VIII of the State Constitution, counties shall adhere to the procedures prescribed herein." § 125.66(1), Fla. Stat. (1995). Section 125.66 imposes detailed notice and hearing requirements depending on the type of ordinance proposed. Three subsections are particularly relevant here: (1) section 125.66(2), governing the "regular enactment procedure" for ordinances that do not involve land use districts; (2) section 125.66(4)(a), governing ordinances that change the zoning map designation for parcels of fewer than ten acres; and (3) section 125.66(4)(b), governing ordinances that change the zoning map designation of parcels larger than ten acres, or which change the list of permitted, conditional, or prohibited uses within a zoning category. We review each of these subsections below.

1. Section 125.66(2): the Regular Enactment Procedure
Section 125.66(2) governs the enactment process for the vast majority of county ordinances. It provides in relevant part:
(2)(a) The regular enactment procedure shall be as follows: The board of county commissioners at any regular or special meeting may enact or amend any ordinance, except as provided in subsection (4), if notice of intent to consider such ordinance is given at least 10 days prior to said meeting by publication in a newspaper of general circulation in the county. A copy of such notice shall be kept available for public inspection during the regular business hours of the office of the clerk of the board of county commissioners. The notice of proposed enactment shall state the date, time, and place of the meeting; the title or titles of proposed ordinances; and the place or places within the county where such proposed ordinances may be inspected by the public. The notice shall also advise that interested parties may appear *827 at the meeting and be heard with respect to the proposed ordinance.
§ 125.66(2), Fla. Stat. (1995) (emphasis added). Thus, section 125.66(2) requires that notice of a proposed ordinance be published at least ten days before the commission meeting at which the ordinance will be considered. The notice must include the title of the proposed ordinance and "the place or places within the county where such proposed ordinance may be inspected by the public." § 125.66(2), Fla. Stat. (1995). Thus, when enacting most ordinances, counties must allow the public to inspect drafts of all proposed regular ordinances before their enactment.
2. Section 125.66(4)(a): Changes to the Zoning Map Designation of Parcels of Land Involving Fewer than Ten Acres
Section 125.66(4)(a), Florida Statutes (1995), prescribes the procedures to be followed in enacting zoning changes affecting fewer than ten acres of land. That section states in relevant part:
(a) In cases in which the proposed ordinance . . . changes the actual zoning map designation for a parcel or parcels of land involving less than 10 contiguous acres, the board of county commissioners, in addition to following the general notice requirements of subsection (2), shall direct its clerk to notify by mail each real property owner whose land [will be affected]. . . . The notice shall state the substance of the proposed ordinance or resolution as it affects that property owner. . . .
§ 125.66(4)(a), Fla. Stat. (1995) (emphasis added). This subsection requires compliance with the notice requirements of subsection (2), described above, and requires that counties mail to each property owner affected by the proposed ordinance a summary of the proposed ordinance explaining how the proposed ordinance will affect them.
3. Section 125.66(4)(b): Ordinances That Change the List of Permitted, Conditional, or Prohibited Uses Within a Zoning Category
The last category of procedures applies, among other areas, to ordinances that change the list of permitted, conditional, or prohibited uses within a zoning category. Monroe County Ordinance 004-1997 falls within this category. Section 125.66(4)(b) provides in relevant part:
(b) In cases in which the proposed ordinance or resolution changes the actual list of permitted, conditional, or prohibited uses within a zoning category . . . the board of county commissioners shall provide for public notice and hearing as follows:
1. The board of county commissioners shall hold two advertised public hearings on the proposed ordinance or resolution. At least one hearing shall be held after 5 p.m. on a weekday, unless the board of county commissioners, by a majority plus one vote, elects to conduct that hearing at another time of day. The first public hearing shall be held at least 7 days after the day that the first advertisement is published. The second hearing shall be held at least 10 days after the first hearing and shall be advertised at least 5 days prior to the public hearing.
2. The required advertisements shall be no less than 2 columns wide by 10 inches long in a standard size or a tabloid size newspaper, and the headline in the advertisement shall be in a type no smaller than 18 point. The advertisement shall not be placed in that portion of the newspaper where legal notices and classified advertisements appear. The advertisement shall be placed in a newspaper of general paid circulation in the county and of general interest and readership in the community pursuant *828 to chapter 50, not one of limited subject matter. It is the legislative intent that, whenever possible, the advertisement shall appear in a newspaper that is published at least 5 days a week unless the only newspaper in the community is published less than 5 days a week. The advertisement shall be in substantially the following form:
NOTICE OF (TYPE OF) CHANGE
The (name of local government unit) proposes to adopt the following by ordinance or resolution: (title of ordinance or resolution).

A public hearing on the ordinance or resolution will be held on (date and time) at (meeting place).
§ 125.66(4)(b) (1995) (emphasis added).
Section 125.66(4)(b) contains several important provisions. It requires that counties hold two public hearings on all proposed ordinances that change the list of permitted, conditional, or prohibited uses within a zoning category. The hearings must be advertised in a newspaper of general circulation. Subsection (4)(b) also contains precise details about the form of the advertisement and its placement within the newspaper edition. Unlike the regular enactment procedure described in subsection (2), however, subsection (4)(b) does not require that drafts of proposed land use ordinances be made available for public review. Also unlike subsection (4)(a), subsection (4)(b) does not require that counties provide notice of the substance of the proposed ordinance or its effect on property owners, and does not require counties to comply with the provisions of subsection (2). In fact, subsection (4)(b) permits counties to provide notice of ordinances that change the permitted, conditional, or prohibited uses within a zoning category by their title only. This distinction will be important in deciding which definition of "substantial or material change" we should adopt.

C. Defining a "Substantive or Material Change"
As noted above, the parties propose three possible definitions of "substantial or material change": (1) a change to the actual list of permitted, conditional, or prohibited uses within a zoning category; (2) a change necessary to secure legislative enactment; and (3) a change in the original purpose of an ordinance. Plaintiffs argue that we should adopt one of the first two definitions, while the County advocates for the third. We first consider the Plaintiffs' proposed definitions, ultimately rejecting them. We then discuss why the County's definition best suits the purposes behind the statutory requirements and the orderly and democratic process of local government.

1. Any Change to the List of Permitted, Conditional, or Prohibited Uses Within Any Zoning Category
Plaintiffs propose that any change to the list of permitted uses within any zoning category requires the process to restart. They derive this standard from the language of section 125.66(4)(b). Plaintiffs argue that any change substantial enough to trigger the enactment process  that is, a change to the list of permitted, conditional, or prohibited uses within a zoning category  is substantial enough to require a restart when the change is made during that process. We disagree. What triggers the requirements of section 125.66(4)(b) is not the "substantial" nature of the proposed ordinance, but the fact that it changes the list of permitted, conditional, or prohibited uses. For purposes of the restart requirement, however, the term "substantial" refers to the importance of the change, not to the effect of the ordinance itself.
*829 The Plaintiffs' proposed standard would be prohibitively restrictive. As the County argues, such a standard would require a restart whenever, due to input from either staff or a member of the public at a public hearing, the County in any way changed the list of permitted, conditional, or prohibited uses within a zoning category. Thus, for example, if in this case the original proposed ordinance permitted vacation rentals in twenty of twenty-three districts, but due to public input the County changed the ordinance to permit vacation rentals in only nineteen districts, the entire process would have to start over again. If, at another public hearing, the County decided to permit vacation rentals in only eighteen districts, the process would have to start yet again. This cycle could potentially repeat itself forever, or at least for an extended period of time. It would render any proposed land use ordinance almost impossible to amend and would result in ironic consequences: far from allowing greater public input into the decision-making process, it would discourage counties from changing a proposed ordinance as a result of public input, as such change would delay the enactment process. This would substantially diminish the role of the public in modifying a proposed ordinance. The purpose of the public hearings that section 125.66(4)(b) requires is to provide a forum for public comment so that proposed ordinances may be modified after input from citizens who may be affected by the ordinance. Under the Plaintiffs' proposed standard, however, even slight changes to the list of permitted, conditional, or prohibited uses to accommodate citizen concerns would require the entire process to start over. Such a standard would provide commissioners with a strong incentive to ignore public commentary and give unmerited weight to the original version of a proposed ordinance. We therefore reject this definition of a substantial or material change.

2. Any Change Necessary to Secure Legislative Passage of an Ordinance
Plaintiffs also argue that a substantial or material change includes "any change necessary to secure legislative passage of the ordinance." Plaintiffs assert that such a change is a "cause-in-fact" of passage, and therefore is necessarily a "substantial factor." Such a test would be both over- and under-inclusive, however. Many changes necessary to ensure passage might not be substantial or material, whereas some substantial changes might be made for reasons other than securing legislative approval. Such a test would also require a subjective and speculative determination of every county commissioner's intent when voting to adopt a county ordinance. Such a standard would be neither workable nor consistent with the letter and purpose of the statute.

3. The General Purpose Standard
Monroe County advocates instead for a definition of "substantial or material change" based on the ordinance's general purpose. The County argues that only changes that alter the original purpose of a proposed land use ordinance should require the enactment process to begin anew. We believe such a standard would be faithful both to the text of section 125.66 and to the public interest. This standard derives from the Florida Attorney General Opinion cited above, which states that "amendments can be made during passage of an ordinance when the amendment is not one changing the original purpose." Op. Att'y Gen. Fla. 82-93 (emphasis added). As previously noted, section 125.66(4)(b) requires that the county advertise only the title of the proposed land use ordinance. It seems reasonable, then, that only changes to the ordinance that would render the advertised title inaccurate *830 or misleading should require the enactment process to begin anew. Consider, for example, a proposed ordinance that seeks to change the permissibility of public swimming pools in various land use districts throughout Monroe County. The title of the proposed ordinance might be noticed as: "Regulation of public swimming pools in all land use districts throughout Monroe County." If during the enactment process the proposed ordinance was changed so that it also affected the list of land use districts where bowling alleys would be permitted, this would render the title inaccurate. Such a change would require the enactment process to start over because the ordinance's title would no longer be accurate. This rationale is consistent with a general purpose test, since the title of a proposed ordinance is an expression of its general purpose. If a change renders the title inaccurate, then it has very likely altered the general purpose of the proposed ordinance as well.
A general purpose test is consistent with relevant Florida cases. See Webb v. Town Council, 766 So.2d 1241, 1244 (Fla. 1st DCA 2000) ("The law is well settled that notice must adequately inform as to what changes are proposed, and the actual change must conform substantially to the proposed changes in the notice."); Love Our Lakes Ass'n v. Pasco County, 543 So.2d 855, 857 (Fla. 2d DCA 1989) (same); Williams v. City of North Miami, 213 So.2d 5 (Fla. 3d DCA 1968) (same).
In this case, even if the enactment procedures had begun anew, the public would not have received meaningful notice of the changes because none of them rendered the title inaccurate. If the enactment process had started over, and the ordinance had been re-noticed, the title would still have read: "Modifying the existing prohibition on tourist housing including vacation rentals in all districts in Monroe County."[2]
Of the three proposed definitions, the general purpose approach also best serves the public's interest in efficient and responsive local government. As explained above, the two definitions Plaintiffs offer contain serious practical difficulties. A definition premised on changes to the general purpose of a proposed ordinance allows the county commission to adopt changes based on input received at public hearings without compromising the public's right to receive adequate notice of proposed changes.
By requiring that counties publish the title of proposed ordinances in a newspaper of general circulation, section 125.66(4)(b) places the public on notice that the availability of a particular land use might be altered throughout the county. The two-hearing requirement allows the public to voice their concerns. Interested citizens may attend the hearings and advise the county commission on how to treat that land use within each of their respective districts. The commissioners may then use the input they receive from the public to modify the list of zoning categories where the land use at issue will be permitted, conditional, or prohibited. As one amicus curiae in this case described the process, "choices can be made, minds can be changed, citizens can be heard, and so long as the original purpose of the ordinance is not altered, the ordinance can evolve and change without the local government having to renew the notice and hearing process." Of the three possible definitions presented in the circuit court's certified question, the general purpose approach *831 is the most practical and provides the greatest benefit to the public.

D. Applying the Standard to Ordinance No. 004-1997
We now apply the general purpose standard to the ordinance. The first title notified the public that the County was considering a change in the permissibility of vacation rentals in all land use districts. The second advertised title provided notice to all residential property owners that vacation rentals in those districts might be restricted. Ultimately, Ordinance No. 004-1997 only prohibited vacation rentals in residential land use districts. Because the actual changes enacted by the ordinance conformed substantially with the notice provided to the public, we hold that the ordinance satisfies the general purpose test. Although the advertised title was modified between the first and second hearings, the first advertised title provided notice to all zoning districts in Monroe County, whereas the second advertised title only provided notice to residential zoning districts. Because the enacted ordinance only affected residential zoning districts, the change in the advertised title was not substantial or material. Both titles put residential district residents on notice of the zoning change that was ultimately adopted. Our opinion might differ if the second advertised title had broadened, rather than limited, the scope of the ordinance.
Plaintiffs argue, however, that various changes were made during the enactment process, and that drafts of the proposed changes were not made available to the public until the last minute. As noted in the previous section, section 125.66(4)(b) does not require that counties provide drafts of proposed ordinances for public review. They are required only for regular ordinances, which are governed by section 125.66(2). Therefore, changes to the drafts cannot form the basis for requiring the enactment process to begin anew.
As noted above, section 125.66(4)(b) requires that counties provide notice only of a proposed ordinance's title. Given that title notice is all that is required, restarting the enactment process would have accomplished little. The changes to the proposed ordinance all related to the regulation of vacation rentals in Monroe County. See City of Hallandale v. State ex rel. Zachar, 371 So.2d 186, 189 (Fla. 4th DCA 1979) ("The title need not be an index to the contents. It is not necessary that it delineate in detail the substance of the statute."); see also A.B.T. Corp. v. City of Fort Lauderdale, 664 F.Supp. 488, 490-91 (S.D.Fla.1987) (same). Nothing in the enacted ordinance rendered the advertised title misleading or inaccurate. Thus, there was no need to restart the enactment procedure.[3]

III. CONCLUSION
For the reasons stated, we hold that a change in the general purpose of a proposed ordinance is the definition of "substantial or material change" most compatible with the text of section 125.66(4)(b). The general purpose test strikes an effective balance between providing the public with adequate notice and permitting the efficient modification of proposed ordinances in response to public input. Having answered the certified question, we return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
*832 LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and BELL, JJ., concur.
NOTES
[1] These are: urban commercial; urban residential; urban residential mobile home; urban residential mobile home-limited; suburban commercial; suburban residential; suburban residential (limited); sparsely settled residential; native area; mainland native area; offshore island; improved subdivision; destination resort; recreational vehicle; commercial fishing area; commercial fishing village; commercial fishing special; mixed use; industrial; maritime industries; military facilities; airport; park and refuge; and conservation. Monroe County, Fla., Code § 9.5-202 (2007).
[2] We do not suggest that the title of the ordinance will always be the only indicator of an ordinance's general purpose. There may be cases where changes to the ordinance may not render the title inaccurate but may alter its general purpose. In this case, however, the ordinance's general purpose remained the same throughout the process.
[3] Plaintiffs also argue that the County's procedures in enacting the ordinance violated due process. That issue, however, is for the Eleventh Circuit Court of Appeals to decide.